UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH
CIVIL ACTION NO. 5:15-CV-7-TBR

MARK PFEIFER, Administrator of the Estate of James Kenneth Embry, Deceased, PLAINTIFF

v.

CORRECTCARE-INTEGRATED HEALTH, INC., et al., DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court upon two Motions. First, there is the Motion filed by Defendant Steve Hiland to dismiss Plaintiff's claim for loss of consortium, loss of companionship, grief, and pain and suffering. [DN 171.] Second, Defendant Hope Grisham[1] has filed a Motion for extension of time to file an answer. [DN 180.] These matters are ripe for adjudication, and their merits are discussed below.

**I. Factual Background**

The following Factual Background section is taken largely from this Court's previous Memorandum Opinion and Order docketed at DN 127: This action arises out of the death of James Kenneth Embry while he was an inmate at the Kentucky State Penitentiary ("KSP"). Embry died of starvation and dehydration after refusing thirty-five of his final thirty-six meals. Following his death, the Kentucky Department of Corrections ("DOC") conducted a Critical Incident Review which concluded that Embry's death "occurred as a result of a systemic failure at the Kentucky State Penitentiary." [DN 105-1, at 19.]

[1] Her listed name in the lawsuit is "Gresham," but the correct spelling is "Grisham."

Embry was a 57-year-old man serving a nine-year sentence after being convicted of drug possession, assault, and wanton endangerment. Embry had a history of mental illness and had been prescribed various medications while at KSP. Embry was also disruptive, having "no less than 25 major disciplinary violations." [*Id.* at 3.] This pattern of disruptive behavior ceased on June 22, 2012. On that date Embry was assaulted by another inmate. The assault, which required Embry to be transported to a local hospital for medical care, appeared to have a major impact on Embry. Embry received no further disciplinary reports until shortly before his death, when he was cited multiple times for failing to eat and harming himself. Embry was fearful and believed there was a "contract" on his life. [*Id.* at 4.]

Embry was prescribed various medications for his mental health while he was an inmate. On May 7, 2013, Embry informed the medical staff that he did not like how these medications made him feel and would no longer take certain medications. Eventually, all of Embry's medications were discontinued on July 22, 2013, after Embry refused to take them for two weeks. Embry continued to fear for his own safety and on November 29, 2013, he was moved to a segregation unit, Cellhouse Three. On December 3, Embry told Dr. Jeane Hinkebein, a psychologist at KSP, that he wanted to begin taking his medication again. Embry was "anxious and paranoid" and believed he "could not take it on the yard." [*Id.*] Embry also repeatedly made statements about wanting to harm himself. These claims were discounted and it was concluded that Embry's actions were goal-driven to influence his housing location. Embry was seen again on December 5 and his request for medication was denied. [*Id.* at 6.] Embry was placed on a 15-minute watch and put into a suicide smock due to the statements he made to staff.

Thereafter, Embry began to display a pattern of refusing to eat many of his meals. [*Id.* at 7.] Embry also continued to make statements about wanting to hurt himself and about how he

had nothing to live for. Throughout the end of December 2013 and into January 2014, Embry began to refuse more and more meals. On January 13, 2014, Embry died. His autopsy concluded that he died from "dehydration with contributing starvation, duodenal ulcer, and emphysema with right ventricle hypertrophy." [*Id.* at 6.] Embry had lost around 44 pounds in the five months before his death.

This action was initially filed as two separate lawsuits. Mark Pfeifer was appointed the Administrator of the Estate of James Embry in Daviess County and filed a case on January 12, 2015. *Pfeifer v. Thompson*, 5:15-cv-7. Robbie Emery Burke was appointed Administrator of the Estate of James Embry in Lyon County and filed a case on January 15, 2015. *Burke v. Correct Care Solutions*, 5:15-cv-15. The Daviess County case was amended to name Ms. Burke the administrator. The Court consolidated these cases. [DN 86.]

## II. Hiland's Rule 12(c) Motion to Dismiss

### A. Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires that the plaintiff's complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief." "Rule 12(b)(6) provides that a complaint may be dismissed for failure to state a claim upon which relief can be granted." *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998). Crucially, "[w]hen considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the district court must accept all of the allegations in the complaint as true, and construe the complaint liberally in favor of the plaintiff." *Lawrence v. Chancery Court of Tennessee*, 188 F.3d 687, 691 (6th Cir. 1999). This means that, "unless it can be established beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," the motion should be denied. *Achterhof v. Selvaggio*, 886 F.2d 826, 831

(6th Cir. 1989). "However, the Court need not accept as true legal conclusions or unwarranted factual inferences." *Blakely v. United States*, 276 F.3d 853, 863 (6th Cir. 2002). A "complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Andrews v. Ohio*, 104 F.3d 803, 806 (6th Cir. 1997).

Although a "complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* The concept of "plausibility" demands that a complaint contain sufficient facts "to state a claim to relief that is plausible on its face." *Id.* at 570. The element of plausibility is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, where the court is unable to "infer more than the mere possibility of misconduct, the complaint has alleged—but has not show[n]—that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks omitted).

Finally, pursuant to Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." The Court analyzes a Rule 12(c) motion for judgment on the pleadings using the same standard as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted. *Fritz v. Charter Township of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010).

**B. Discussion**

Hiland has presented three key arguments to the Court regarding why Plaintiff's claim for loss of consortium, loss of companionship, grief, and pain and suffering should be dismissed for failure to state a claim upon which relief can be granted. However, as an initial matter, this Court must address the propriety of Hiland's Motion at this stage in the litigation. Hiland filed an Answer to the original Complaint on February 5, 2015. [DN 6.] Hiland also filed Answers with respect to Plaintiff's Amended Complaints. [*See* DN 87, 88, 108.] It is axiomatic that the filing of a responsive pleading forecloses a defendant's opportunity and ability to file a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted.

Notably though, Rule 12(c) provides that a party may move for judgment on the pleadings *after* such pleadings have closed. Fed. R. Civ. P. 12(c). Thus, the filing of an answer does not foreclose a defendant's opportunity to move under this rule. The question then becomes whether, having announced an intention to move under Rule 12(b)(6), this Court may construe it as a Rule 12(c) motion instead, thereby preventing its automatic dismissal. The Court finds that it may do so. In *Satkowiak v. Bay Cnty. Sheriff's Dept.*, 47 F. App'x 376, 377 (6th Cir. 2002), the Sixth Circuit Court of Appeals explained how the conversion works. There, the defendant Sheriff's Department answered the plaintiff's Complaint and, thereafter, filed a motion to dismiss pursuant to Rule 12(b)(1) and 12(b)(6). *Id.* In reviewing the district court's decision, the Sixth Circuit explained that

> [t]echnically, under the Federal Rule of Civil Procedure 12(b), which requires that '[a] motion making any of these defenses shall be made before pleading if a further pleading is permitted,' the Sheriff Department's motion to dismiss under Rule 12(b)(6) should be labeled as a Rule 12(c) motion for judgment on the pleadings since the Sheriff's Department had already filed an answer to the complaint.

*Id.* at 377 n.1. *See also Wagner v. Higgins*, 754 F.2d 186, 188 (6th Cir. 1985) (explaining that where defendants' motion was incorrectly labeled as a Rule 12(b)(6) motion when it should have been under Rule 12(c), "such an incorrect reference to the Rules is not fatal where the substance of the motion is plain."). Thus, the Court has concluded that, although Hiland referenced Rule 12(b)(6) in the instant Motion, "the substance of the motion is plain" as one under Rule 12(c), and the Court will analyze it as such. Indeed, the Court ordered Plaintiff to file a renewed Response to the instant Motion, [*See* DN 183 (Court Order)] addressing it on its merits, [DN 184], and Hiland also filed a renewed Reply thereto. [DN 185.]

Plaintiff has laid out the following claims: (1) violation of Embry's Constitutional rights under 42 U.S.C. § 1983; (2) negligence and gross negligence; (3) Intentional Infliction of Emotional Distress ("IIED"); (4) Wrongful Death; and (5) Negligence Per Se. [DN 105, at 22-28.] After each of these claims, Plaintiff has stated that "Embry's heirs have suffered damages, including, but not limited to, pecuniary loss (including lost wages), loss of consortium, grief, loss of companionship, pain and suffering." [*See id.* at p. 91, 112, 116, 124.]

In his Motion to Dismiss, Hiland sets forth three key arguments: (1) an estate cannot recover damages for loss of consortium, loss of companionship, grief, or pain and suffering; (2) the statute of limitations has passed for Embry's children to bring such a claim in their individual capacities; and (3) even if the statute of limitations has not run, or an amendment would relate back, emancipated children cannot recover for loss of consortium or loss of companionship. [*See* DN 171-1, at 3-7.]

**1. Plaintiff's § 1983 Claim**

Regarding Plaintiff's § 1983 claim, Hiland correctly points out that this claim is a personal one. In *Jaco v. Bloechle*, 739 F.2d 239, 241 (6th Cir. 1984), the Sixth Circuit Court of

Appeals explained that "Section 1983 creates a cause of action for deprivation of civil rights. By its own terminology, the statue grants the cause of action 'to the party injured.'" This means that "it is an action *personal* to the injured party." *Id.* Stated differently, a § 1983 claim, "by virtue of the explicit language of the section itself, is a personal action cognizable only by the party whose civil rights ha[ve] been violated…." *Id.* at 242. Likewise, in *Claybrook v. Birchwell*, 199 F.3d 350, 357 (6th. Cir. 2000), the Sixth Circuit explained that "no cause of action may lie under section 1983 for emotional distress, loss of a loved one, or any other consequent collateral injuries allegedly suffered personally by the victim's family members." The Eastern District of Michigan expanded on this in 2014, citing to numerous cases in this circuit which have handed down similar holdings:

> Applying *Jaco*[, 739 F.2d at 239,] in *Broadnax v. Webb*, 892 F. Supp. 188 (E.D. Mich. 1995), the court held that children of a parent who was in a permanent vegetative state after she attempted to swallow a bag of cocaine during a police raid of her home could not recover damages for their loss of companionship of their mother in a § 1983 civil rights suit because 'the denial of rights under the Constitution…was suffered by the parent….The court reasoned, '[A] constitutional violation is something personal to the individual injured,' and 'a violation against one member of a family does not confer standing upon all other members of that particular family' to recover damages….*See also Lee v. City of Norwalk, Ohio*, 2012 U.S. Dist. LEXIS 123631, 2012 WL 3778975, at *12 (N.D. Ohio Aug. 30, 2012) (a spouse cannot state a claim for loss of consortium under § 1983 because such claims are entirely personal to the direct victim of the constitutional tort)…; *Garrett v. Belmont County Sheriff's Department*, 374 F. App'x 612, 615 (6th Cir. 2010) (damages for emotional distress, loss of a loved one or any other consequent collateral injuries will not lie under § 1983: 'Those kinds of injuries are appropriately raised in a state tort law cause of action.' *Id.*); *Alexander v. Beale Street Blues Co., Inc.*, 108 F. Supp. 2d 934, 953 (W.D. Tenn. 1999) (a decedent's survivors may not recover for their own damages under § 1983)….

*Blair v. Harris*, 993 F. Supp. 2d 721, 731 (E.D. Mich. 2014). From this, it is clear to the Court that, in this case, Plaintiff is not permitted to recover damages on behalf of Embry's heirs for loss

of consortium, loss of companionship, grief, or pain and suffering under the § 1983 claim. The Court will grant Hiland's Motion on this claim.

### 2. Plaintiff's Common Law Claims

The next issue concerns Plaintiff's claims for negligence and gross negligence, IIED, wrongful death, and negligence per se. Under Kentucky law, claims for loss of consortium "belong[] specifically to a spouse, not to the estate of the deceased." *Martin v. Ohio Cnty. Hosp. Corp.*, 295 S.W.3d 104, 107-08 (Ky. 2009); *see also Chuby v. Tharpe*, No. 3:09-cv-00018-H, 2011 WL 6026614, at *1-*2 (W.D. Ky. Dec. 2, 2011) (discussing *Martin*, 295 S.W.3d at 107-08 and concurring that "[a] claim for loss of consortium allows a spouse to recover damages against a third party. With enactment of the statute [KRS § 411.145(1)], the General Assembly made loss of consortium a statutory cause of action, which belongs specifically to the spouse, not to the estate of the deceased."); *see also Loew v. Allen*, 419 S.W.2d 734, 734 (Ky. 1967) (the "right of recovery for loss of consortium is [a] personal right of [a] surviving [spouse] individually….").

In the present action, the lone Plaintiff is Mark Pfeifer, the Administrator of the Estate of James Embry. Contained within the five claims made by Pfeifer as Administrator is, as discussed above, the following language: "Embry's heirs have suffered damages, including, but not limited to, pecuniary loss (including lost wages), loss of consortium, grief, loss of companionship, pain and suffering." [*See id.* at p. 91, 112, 116, 124.] However, such non-pecuniary damages must be brought by Embry's survivors in their individual capacities and not by Pfeifer as Administrator. The above-cited case law dealt specifically with surviving *spouses*, while Plaintiff's Complaint deals with surviving *heirs*, but the same principle applies, because the right to bring a claim for loss of consortium does not belong to the Estate of Embry and, consequently, Pfeifer has no ability to advance such claims. Since the Court finds that Plaintiff cannot recover non-pecuniary

damages for loss of consortium on behalf of Embry's "heirs," it need not address Hiland's arguments concerning the statute of limitations and relation back, or the question of emancipated children recovering for loss of consortium or companionship.

## III. Grisham's Motion for Extension of Time

The second Motion at issue is Defendant Grisham's Motion for extension of time to file an answer. Grisham's (incorrectly sued as Hope "Gresham") Motion for extension of time [DN 180] having been filed with this Court, and the Court being otherwise sufficiently advised;

**IT IS ORDERED** that Grisham's Motion [DN 180] is **GRANTED**, and she shall have **21 days** from the date of this Order in which to file an answer or otherwise respond to Plaintiff's Complaint.

## IV. Conclusion

For the reasons stated in this Memorandum Opinion, **IT IS HEREBY ORDERED** as follows:

1. Hiland's Motion to dismiss, [DN 171], is **GRANTED** insofar as Plaintiff may not pursue claims for loss of consortium on behalf of Embry's heirs.

2. Grisham's Motion for an extension of time to file an answer, [DN 180], is **GRANTED**. Grisham shall have twenty-one (21) days from the date of entry of this Order to file an answer or otherwise respond.

**IT IS SO ORDERED.**

**Thomas B. Russell, Senior Judge**
**United States District Court**
April 17, 2018

cc: Counsel of Record