IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

| | |
|---|---|
| MARK PFEIFER, Administrator of the Estate of James Kenneth Embry, <br><br> PLAINTIFF, <br><br> v. <br><br> CORRECTCARE-INTEGRATED HEALTH, INC., *et al.*, <br><br> DEFENDANTS | ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> Case No. 5:15-CV-007-TBR (Lead Case) <br> (consolidated with 5:15-CV-015-TBR) |

**PLAINTIFF'S PRETRIAL BRIEF**

COMES NOW, Plaintiff Mark Pfeifer ("Plaintiff"), Administrator of the Estate of James Kenneth Embry ("Mr. Embry"), and respectfully submits his Pretrial Brief as follows:

**I.      Succinct Statement of Fact**

Mr. Embry was an inmate at the Kentucky State Penitentiary ("KSP"). He died on January 13, 2014 while in custody. The coroner found that his death was attributable to dehydration and starvation. Although Mr. Embry was over six feet tall, he weighed only 120 pounds at the time of his death, having lost 50 pounds, or almost one-third (1/3) of his body weight, in the preceding four months. Mr. Embry literally ***starved to death***, over a period of forty-five (45) days, as responsible medical and correctional personnel at KSP -- including Defendants Robert Wilkinson, APRN ("Mr. Wilkinson" or "Wilkinson"), an employee of Defendant CorrectCare Integrated Health, Inc. ("CCIH"), and Steve Hiland, M.D. ("Dr. Hiland") -- idly and callously sat by and watched. By the time of his death, Mr. Embry had missed ***thirty-five (35) of his last thirty-six (36) meals.***

This is a clear case of widespread, callous, inhumane and reckless neglect of Mr. Embry's serious medical and mental health needs. As part of the Kentucky Department of Corrections' ("KDOC") own Critical Incident Review, it found as follows:

> The ***death of Inmate James Embry occurred as the result of a systemic failure*** at the Kentucky State Penitentiary involving many interacting issues. It appears that the consensus among staff who were involved with Inmate Embry during his stay in segregation and up until the date of his death, was that his behavior was strictly goal driven and was an attempt on his behalf to manipulate his housing situation. While this assumption may have been initially true it should have become clear to staff as the behavior continued and the cumulative effect of his actions became ***evident***, that ***his well-being was in serious jeopardy.*** Many staff members were not aware of Inmate Embry's situation as they were not interacting with inmates on the segregation walks and thus never interacted with him, even though they were technically conducting rounds. Others interacted extensively with him but failed to see beyond their initial presumptions of malingering, while others were ***well aware of serious symptomatology which should have triggered a medical response but did not.*** A weekly system of review and collaboration between departments, aimed at addressing situations of special needs with inmates in the segregation units, ***failed miserably*** as no one involved in the process initiated discussion regarding his situation. In summary, ***the failure of many interacting systems to address a correctable situation and to follow written standing orders and protocols led to the ultimate death of Inmate Embry.***

Critical Incident Report at CIR000019 (emphasis added).

Plaintiff has brought numerous claims, on behalf of Mr. Embry's Estate, against the Defendants, CCIH, Wilkinson and Dr. Hiland. Plaintiff's remaining claims are as follows: **(A)** Denial of Medical Care/Unconstitutional Conditions of Confinement in Violation of the Eighth Amendment to the United States Constitution (pursuant to 42 U.S.C. § 1983) (All Defendants); **(B)** Supervisory Liability (pursuant to 42 U.S.C. § 1983) (Dr. Hiland); **(C)** Municipal Liability (pursuant to 42 U.S.C. § 1983) (CCIH); **(D)** Negligence (All Defendants); **(E)** Gross Negligence (All Defendants); and **(F)** Wrongful Death (All Defendants). Plaintiff seeks compensatory damages, punitive damages and an award of attorney fees and costs pursuant to § 1988.

## II. Questions of Fact

1. Whether during his incarceration at KSP, Mr. Embry exhibited serious medical needs.

2. Whether CCIH, Wilkinson, and/or Dr. Hiland were deliberately indifferent to Mr. Embry's serious medical needs.

3. Whether CCIH, Wilkinson, and/or Dr. Hiland delayed Mr. Embry's receipt of necessary medical care and whether such delay resulted in substantial harm.

4. Whether Dr. Hiland had any supervisory authority over the nursing staff.

5. Whether, through his acts and omissions, and imposition of rules and customs, Dr. Hiland implicitly authorized, approved, or knowingly acquiesced in unconstitutional conduct by the nursing staff.

6. Whether CCIH, Wilkinson, and/or Dr. Hiland forbade and obstructed nursing staff from following KDOC's hunger strike "standing order".

7. Whether CCIH, Wilkinson, and/or Dr. Hiland complied with KDOC's hunger strike policy and standing order.

8. Whether compliance with KDOC's hunger strike policy and standing order would probably have saved Mr. Embry's life.

9. Whether Dr. Hiland imposed the unwritten institutional rule at KSP that inmates were to be taken off of hunger strike watch if they drank tea or juice.

10. Whether this unwritten rule was dangerous to the health and safety of inmates at KSP.

11. Whether CCIH, Wilkinson, and/or Dr. Hiland failed to communicate with mental health staff regarding patient care, including the care of Mr. Embry.

12. Whether any failure to communicate with mental health staff contributed to Mr. Embry's suffering and death.

13. Whether Dr. Hiland (1) promulgated, created, implemented or possessed responsibility for the continued operation of a policy or custom that (2) caused the complained of constitutional harm.

14. Whether Wilkinson was employed by CCIH.

15. Whether CCIH had any supervisory responsibility for Wilkinson.

16. Whether CCIH ever provided any training to or supervision over Wilkinson.

17.     Whether CCIH provided Wilkinson any guidance in how to perform his "Essential Functions."

18.     Whether CCIH ever did anything to assure that Wilkinson was meeting his written job expectations.

19.     Whether there is an affirmative link between Mr. Embry's death and any CCIH 'policy' or 'custom.'

20.     Whether CCIH had actual or constructive notice that its action or failure to act was substantially certain to result in a constitutional violation, and it consciously or deliberately chose to disregard the risk of harm.

21.     Whether CCIH failed to adequately train personnel, including Wilkinson, responsible for the health or safety of Mr. Embry, or inmates like Mr. Embry.

22.     Whether CCIH and/or Dr. Hiland failed to adequately supervise personnel, including Wilkinson, responsible for the health or safety of Mr. Embry, or inmates like Mr. Embry.

23.     Whether there is an affirmative causal link between Mr. Embry's death and any failure to train or supervise.

24.     Whether Defendants' constitutional violations resulted in, or were a moving force behind, pain, severe emotional distress, mental anguish, loss of life suffered by Mr. Embry, and any other damages sought by Plaintiff on behalf of the Estate.

25.     Whether the acts and/or omissions of CCIH, Wilkinson, and/or Dr. Hiland were malicious, reckless and/or accomplished with a conscious disregard of Mr. Embry's rights, thereby entitling Plaintiff to an award of exemplary and punitive damages.

26.     Whether CCIH, Wilkinson, and/or Dr. Hiland were negligent or grossly negligent in their care, or lack thereof, of Mr. Embry.

27.     Whether the health care, or lack thereof, provided to Mr. Embry by CCIH, Wilkinson, and/or Dr. Hiland was deficient, in violation of applicable standards of care.

28.     Whether any negligence or gross negligence by CCIH, Wilkinson, and/or Dr. Hiland was a proximate cause of pain, severe emotional distress, mental anguish, loss of life suffered by Mr. Embry, and any other damages sought by Plaintiff on behalf of the Estate.

29.     Whether there is an affirmative link between Mr. Embry's death and a 'policy' or 'custom' for which Dr. Hiland and/or CCIH possessed responsibility.

30.     Whether there is an affirmative causal link or nexus between Mr. Embry's death and any act or omission of any Defendant.

31. Whether any deliberate indifference to Mr. Embry's serious medical condition was a proximate cause of his death.

32. Whether Plaintiff is entitled to an award of compensatory damages, and if so, how much?

33. Whether Plaintiff is entitled to an award of punitive damages, and if so, how much?

**III.    Questions of Law (With Citations)**

   **A.    Plaintiff's Federal Claims**

1. The Eighth Amendment embodies "broad and idealistic concepts of dignity, civilized standards, humanity, and decency . . . ." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). The Amendment's prohibition of "cruel and unusual punishment" bars a civil rights defendant's "deliberate indifference to the serious medical needs of prisoners" and their safety because such acts or omissions amount to an "unnecessary and wanton infliction of pain." *Id*. at 104. The rationale behind this principle is obvious:

> [W]hen the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs – e.g., food, clothing, shelter, <u>medical care, and reasonable safety</u> – it transgresses the substantive limits on state action set by the Eighth Amendment . . . .

*DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 200 (1989) (emphasis added).

2. When a plaintiff demonstrates "deliberate indifference" to a prisoner's health or safety, resulting in a deprivation of a basic human need, the Eighth Amendment's proscription of the "wanton and unnecessary infliction of pain" is violated. *Estelle*, 429 U.S. at 104-05; *Helling v. McKinney*, 509 U.S. 25, 31-32 (1993); *Brooks v. Celeste*, 39 F.3d 125 (6th Cir. 1994).

3. "A … claim asserting a constitutional violation for denial of medical care has objective and subjective components. The objective component requires the existence of a

sufficiently serious medical need. . . . The subjective element requires an inmate to show that prison officials have a sufficiently culpable state of mind in denying medical care." *Jones v. Muskegon County,* 625 F.3d 935, 941 (6th Cir. 2010) (internal quotation marks and citations omitted).

4. In determining whether a medical condition is sufficiently serious, the Sixth Circuit has looked to whether a reasonable doctor or nurse would recognize that the inmate needed medical attention. *See, e.g., Bays v. Montmorency Cty.,* 874 F.3d 264, 268–69; *Sarah v. Thompson,* 109 F. App'x 770, 771 (6th Cir. 2004). The Sixth Circuit has specifically held that dehydration and self-harm related to mental illness are "sufficiently serious" under the objective prong of the deliberate indifference analysis. *See Gibson v. Moskowitz,* 523 F.3d 657, 662–63 (6th Cir. 2008); *Clark-Murphy v. Foreback,* 439 F.3d 280, 289–90 (6th Cir. 2006).

5. A plaintiff establishes the subjective prong of the deliberate indifference test through evidence that the defendant knew of and disregarded an excessive risk to inmate health or safety. *Farmer,* 511 U.S. at 837. The finder of fact is permitted to infer a defendant's knowledge of the risk from circumstantial evidence. *See, e.g., Dominguez v. Corr. Med. Servs.,* 555 F.3d 543, 550 (6th Cir. 2009) (noting that circumstantial evidence is important in a deliberate-indifference analysis because "government officials do not readily admit" culpability). The jury may conclude that a Defendant knew of Mr. Embry's serious medical need from the very fact that it was obvious. *Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir. 1976); *Gibson v. Moskowitz,* 523 F.3d 657, 662–63 (6th Cir. 2008) (quoting *Farmer,* 511 U.S. at 842).

6. Proof that a defendant acted for the very purpose of causing harm or with knowledge that harm will result is not required. *Farmer*, 511 U.S. at 842.

7. Plaintiff does not have to show that Mr. Embry "was literally ignored" to prove a

constitutional violation; only that "his serious medical needs were disregarded." *LeMarbe v. Wisneski*, 266 F.3d 429, 439 (6th Cir. 2001), citing *Sherrod v. Lingle*, 223 F.3d 605, 611-12 (7th Cir. 2000).

8. The jury can infer deliberate indifference in this case from the mere fact that the Defendants knew Mr. Embry was ill, knew his "treatment" was ineffective, and did nothing more to improve his condition. *Hathaway v. Coughlin*, 37 F.3d 63, 68 (2nd Cir. 1994); *McElligott v. Foley*, 182 F.3d 1248, 1257-58 (11th Cir. 1999).

9. Defendants may not avoid liability by "refus[ing] to verify underlying facts that he strongly suspected to be true, or declin[ing] to confirm inferences of risk that that he strongly suspected to exist . . . ." *Id*. at 843, fn. 8.

10. Failure to inquire into facts necessary to make a professional judgment may constitute deliberate indifference. *See, e.g., Miltier v. Beorn*, 896 F.2d 848, 853 (4th Cir. 1990).

11. Violation of applicable policies is evidence that an individual defendant was deliberately indifferent to Mr. Embry's obviously serious medical condition. *Barker v. Goodrich*, 649 F.3d 428, 436-37 (6th Cir. 2011); *Harris v. City of Circleville,* 583 F.3d 356, 369 (6th Cir. 2009); *Talal v. White*, 403 F.3d 423, 428 (6th Cir. 2005).

12. Plaintiff also brings his 42 U.S.C. § 1983 claims against CCIH pursuant to a municipal liability theory. A private entity, like CCIH, that contracts to perform traditional state functions may be sued pursuant to § 1983 under a municipal liability theory. *See, e.g., Shadrick v. Hopkins Cty., Ky.,* 805 F.3d 724, 736 (6th Cir. 2015); *Johnson v. Karnes,* 398 F.3d 868, 877 (6th Cir. 2005). "[W]hen execution of a ... policy or custom ... inflicts the injury ... [the] entity is responsible under § 1983." *Monell v. Dep't of Social Servs.,* 436 U.S. 658, 691 (1978).

13. Plaintiff may establish the requisite policy or custom through evidence of inadequate supervision or training. *See, e.g., Shadrick,* 805 F.3d at 738-40. An employer, like CCIH, can be liable for a failure to train or supervise its employees based on the company's "own deliberate indifference to the rights of inmates with whom [the employee(s)] came into contact," *id.* at 742–43, and that the "inadequate training and supervision actually caused, or was closely related to, [the inmate's] injury [or] death." *Id.* at 743.

14. For supervisory liability to exist, a defendant, here Dr. Hiland, need only have implicitly authorized, approved, or knowingly acquiesced in the misconduct of subordinates. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (quoting *Hays v. Jefferson County*, 668 F.2d 869, 874 (6th Cir. 1982)).

15. Defendants have waived any qualified immunity defense by failing to adequately and timely raise it.

    **B.**     **Plaintiff's State Claims.**

1. The elements of negligence are duty, breach of duty, and resulting injury. *Workman v. Columbia Natural Resources,* 864 F. Supp. 638, 641 (E.D. Ky. 1994) (citing *Watters v. TSR, Inc.,* 904 F.2d 378, 380 (6th Cir. 1990)).

2. Defendants owed Mr. Embry an affirmative legal duty because of his special relationship to them. *Fryman v. Harrison,* Ky., 896 S.W.2d 908, 910 (1995). A special relationship exists when "the victim [is] in state custody … at the time in question, and that the violence or other offensive conduct [is] perpetrated by the state actor." *Fryman,* 896 S.W.2d at 910 (quoting *Ashby v. Louisville,* Ky. App., 841 S.W.2d 184 (1992)).

3. The law also imposes a specific duty "to exercise reasonable and ordinary care and diligence to prevent unlawful [and foreseeable] injury to a prisoner …." *Lamb v. Clark,* Ky., 138 S.W.2d 350, 352 (1940); *Ratliff v. Stanley,* Ky., 7 S.W.2d 230, 232 (1928). Indeed, this duty is

8

statutory and required Defendants to treat Mr. Embry "humanely." KRS 71.040.

4. Kentucky law recognizes a universal rule of negligence. *Workman v. Columbia Natural Resources,* 864 F. Supp. 638, 641 (E.D. Ky. 1994). "Every person owes a duty to every other person to exercise ordinary care in his activities to prevent any such foreseeable injury from occurring to such other person." *Workman,* 864 at 641 (citing *Watters,* 904 F.2d at 380) (emphasis omitted); *see also Grayson Fraternal Order of Eagles, Aerie No. 3738, Inc. v. Claywell,* Ky., 736 S.W.2d 328, 332 (1987) ("This is an old rule, and a good one.").

5. Persons responsible for the care and custody of Kentuckians behind bars can be sued for their tortious acts or omissions occurring within the scope of their employment." *Commonwealth of Kentucky Board of Claims v. Harris,* Ky., 59 S.W.3d 896, 899 (2001) (citing *Sudderth v. White,* Ky. App., 621 S.W.2d 33 (1981)).

6. Because Wilkinson was CCIH's employee acting within the scope of his employment, CCIH is vicariously liable for his negligence. *See, e.g., Papa John's Int'l, Inc. v. McCoy,* 244 S.W.3d 44, 47 (Ky. 2008).

7. CCIH asserts that it cannot be held vicarious liability for Wilkinson's negligence because Wilkinson was a "loaned servant" or "borrowed servant". In borrowed servant cases, agency for one party is only destroyed by agency for another if the fulfillment of one role requires the abandonment of the other. *See Nazar v. Branham,* 291 S.W.3d 599, 607 (Ky. 2009).

8. Plaintiff also asserts that Defendants *grossly* neglected Mr. Embry. Gross negligence means the failure to perform a duty in wanton or reckless disregard of the consequences to the life or safety of another. *See Gibson v. Fuel Transport, Inc.,* 410 S.W.3d 56, 59 (Ky. 2013).

Respectfully submitted,

/s/Robert M. Blakemore
Daniel Smolen
danielsmolen@ssrok.com
Robert M. Blakemore

bobblakemore@ssrok.com
Smolen & Roytman, PLLC
701 South Cincinnati Avenue
Tulsa, OK 74119
Phone: (918) 585-2667
Fax: (918) 585-2669

Gregory A. Belzley
gbelzley@aol.com
Camille A. Bathurst
camillebathurst@aol.com
BelzleyBathurst Attorneys
P.O. Box 278
Prospect, KY  40059
502/228-5084

Bradley P. Rhoads
brad@rhoadsandrhoads.com
Sara J. Martin
sara@rhoadsandrhoads.com
Rhoads & Rhoads, PSC
115 East Second Street, Suite 100
Owensboro, KY  42302
270/683-4600

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of March 2019, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to all ECF registrants who have appeared in this case.

s/ Robert M. Blakemore