UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:15-CV-7-TBR

MARK PFEIFER                                              PLAINTIFF

v.

STEVE HILAND, MD                                     DEFENDANT

## MEMORANDUM OPINION AN ORDER

This matter is before the Court upon motion *in limine* by Defendant, Steve Hiland, M.D. ("Dr. Hiland"), to exclude the "Critical Incident Review" Report ("CIR") generated after the death of Mr. James Embry. (R. 238). Plaintiff, Mark Pfeifer, as Administrator of the Estate of Mr. Embry, has responded to Dr. Hiland's motion *in limine*. (R. 272). Fully briefed, this matter is ripe for review and for the following reasons, it is **GRANTED in part and DENIED in part.**

## BACKGROUND[1]

Mr. Embry, formerly an inmate at Kentucky State Penitentiary ("KSP"), died of dehydration on January 13, 2014. Plaintiff alleges that Dr. Hiland was, at all relevant times, the "Facility Physician" at KSP. Following Mr. Embry's death, the Kentucky Department of Corrections ("KDOC") conducted an investigation into the facts surrounding the incident. (R. 238 at 1). From this investigation, the KDOC "Review Team"[2] prepared a Critical Incident Review Report. The CIR purports to be conducted in accordance with Corrections Policy and Procedure

---

[1] For a more complete explanation of the facts giving rise to this action, *see* this Court's opinion addressing Dr. Hiland's motion for summary judgment.

[2] The Review Team consisted of: (1) Angela Dunham, a KDOC attorney; (2) Dr. Doug Crall, KDOC's medical director; (3) Cookie Crews, KDOC's health service administrator; (4) Dr. Deborah Coleman, KDOC's mental health director; and (5) Aaron Smith, deputy warden of Kentucky State Reformatory. (R. 224-2 at 2).

#8.3 and consists of factual findings, identifies areas of concern at KSP, proposes a conclusion regarding the reason why Mr. Embry died, and includes recommendations to prevent another incident from occurring in the future. (R. 224-2). Dr. Hiland argues that the CIR is hearsay and seeks to have it excluded from evidence in its entirety. Alternatively, Dr. Hiland seeks to have portions of the CIR that are double hearsay excluded from evidence. More specifically, Dr. Hiland argues that the CIR does not fit within the "public records" exception to the hearsay rule, that it contains hearsay within hearsay which must be excluded under Fed. R. Evid. 805, that the CIR's recommendations are subsequent remedial measures that must be excluded under Fed. R. Evid. 407, and that the entire CIR should be excluded under Fed. R. Evid. 403 because its probative value is substantially outweighed by the danger of undue prejudice. (R. 238 at 2).

## STANDARD

Using the inherent authority to manage the course of trials before it, this Court may exclude irrelevant, inadmissible, or prejudicial evidence through *in limine* rulings. *See Luce v. United States*, 469 U.S. 38, 41 n.4, 105 S. Ct. 460, 83 L. Ed. 2d 443 (1984) (citing Fed. R. Evid. 103(c)); *Louzon v. Ford Motor Co.*, 718 F.3d 556, 561 (6th Cir. 2013); *Mahaney v. Novartis Pharms. Corp.*, 835 F. Supp. 2d 299, 303 (W.D. Ky. 2011). Unless such evidence is patently "inadmissible for any purpose," *Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997), though, the "better practice" is to defer evidentiary rulings until trial, *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975), so that "questions of foundation, relevancy and potential prejudice may be resolved in proper context," *Gresh v. Waste Servs. of Am., Inc.*, 738 F. Supp. 2d 702, 706 (E.D. Ky. 2010). A ruling *in limine* is "no more than a preliminary, or advisory, opinion." *United States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994) (citing *United States v. Luce*, 713 F.2d 1236, 1239 (6th Cir. 1983), *aff'd*, 469 U.S. 38, 105 S. Ct. 460, 83 L. Ed. 2d 443). Consequently,

the Court may revisit its *in limine* rulings at any time and "for whatever reason it deems appropriate." *Id.* (citing *Luce*, 713 F.2d at 1239).

## DISCUSSION

**(A) Public records exception.**

Federal Rules of Evidence R. 803(8)(A)(iii) and R. 803(8)(B) state in pertinent part that "[t]he following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness: . . . A record or statement of a public office if . . . it sets out . . . in a civil case . . . factual findings from a legally authorized investigation; and . . . the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness." Conclusions and opinions, as well as facts, are admissible under Rule 803(8) as long as they are based on a factual investigation and satisfy the Rule's trustworthiness requirement. *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 170 (1988). The Rule "assumes admissibility in the first instance but with ample provision for escape if sufficient negative factors are present." *Bank of Lexington & Trust Co. v. Vining-Sparks Securities, Inc.*, 959 F.2d 606, 616 (6th Cir. 1992) (quoting Advisory Committee notes). The "'provision for escape' is contained in the final clause of the Rule: evaluative reports are admissible unless the sources of information or other circumstances indicate lack of trustworthiness." *Beech Aircraft Corp.*, 488 U.S. at 167 (internal quotation marks omitted). Because such records are presumed to be admissible, "the party opposing the admission of the report must prove that the report is not trustworthy." *Bank of Lexington & Trust Co.*, 959 F.2d at 616 (citing *Baker v. Elcona Homes Corp.*, 588 F.2d 551, 558 (6th Cir. 1978), *cert. denied*, 441 U.S. 993 (1979)).

Courts look to four factors when determining if a report is considered trustworthy: "(1) the timeliness of the investigation, (2) the special skill or experience of the investigators, (3) whether the agency held a hearing, and (4) possible motivational problems." *Id.* These four factors are not exclusive. The Court may also consider "any circumstance which may affect the trustworthiness of the underlying information, and thus, the trustworthiness of the findings." *Alexander v. Caresource*, 576 F.3d 551, 563 (6th Cir. 2009) (quoting *In re Complaint of Paducah Towing Co., Inc.*, 692 F.2d 412, 420 (6th Cir. 1982)). Furthermore, "safeguards built into other portions of the Federal Rules, such as those dealing with relevance and prejudice, provide the court with additional means of scrutinizing and, where appropriate, excluding evaluative reports or portions of them." *Beech Aircraft Corp.*, 488 U.S. at 167-68.

Before evaluating the trustworthiness factors, the Court must address two threshold issues raised by Dr. Hiland. First, Dr. Hiland argues that the CIR is not the result of a "legally authorized investigation" as is required by Rule 803(8). Dr. Hiland asserts that although the CIR purports to be "conducted in accordance with Corrections Policy and Procedure #8.3," the policy had not yet been made available in discovery and it was therefore impossible to determine the boundaries of the authority. Corrections Policy and Procedure #8.3 ("CPP #8.3") has since been filed with the Court. Upon reviewing CPP #8.3, the Court finds that the CIR is the result of a legally authorized investigation. In relevant part, CPP #8.3 mandates the creation of a "Review Team" following Critical Incidents who "shall determine facts relating to the incident, including weaknesses or strengths found in the facility, the procedures or staff performance." CPP #8.3 gives broad discretion to the Commissioner of Adult Institutions in selecting the members of the "Review Team." Because the review team who prepared the CIR in this case determined facts relating to Mr. Embry's death and identified weaknesses in procedures and staff performance, and because

the Commissioner is given discretion in formulating the team, the CIR is the result of a legally authorized investigation.

Second, Dr. Hiland argues that the CIR is inadmissible because the CIR Team lacked firsthand knowledge of the events forming the basis of the CIR. Instead, Dr. Hiland argues, the CIR team based their report on their review of selected documents and interviews. Dr. Hiland asserts that *Miller v. Field*, 35 F.3d 1088 (6th Cir. 1994) is binding precedent and warrants exclusion of the CIR.

Dr. Hiland's argument is misguided, however, because "it is not necessary that the person who prepares the report have first-hand knowledge of the events for the report to be admissible pursuant to Rule 803(8)." *Nowell v. City of Cincinnati*, No. 1:03-CV-869, 2006 WL 2619846, at *4, n. 2 (S.D. Ohio Sept. 12, 2006) (citing *Combs v. Wilkinson*, 315 F.3d 548 (6th Cir. 2002); *Hickson Corp. v. Norfolk S. Ry. Co.*, 124 Fed. Appx. 336 (6th Cir. 2005)). In *Combs*, the Sixth Circuit Court of Appeals recognized that "[i]nvestigative reports 'embody the results of investigation and accordingly are often not the product of the declarant's firsthand knowledge.'" 315 F.3d at 555 (quoting 2 *McCormick on Evidence* § 296 (5th ed. 1999)). The *Combs* court also acknowledged that, if Rule 803(8) required the person preparing the report to have firsthand knowledge, "an investigative report would never be admissible as such reports typically are not prepared by persons directly involved in the matter under investigation." *Id.* at 555-56. Furthermore, the Sixth Circuit Court of Appeals held in *Alexander v. CareSource* that "lack of personal knowledge is not a proper basis for exclusion of a report otherwise admissible under Rule 803(8)." 576 F.3d 551, 562-63 (6th Cir. 2009). The *Alexander* court noted that *Combs* rejected the argument that a report must be based on firsthand knowledge to be admissible under 803(8) and that it is "unlikely that the report's author(s) will have any personal knowledge of the incidents

investigated." *Id.* at 562. Finally, the *Alexander* court explained that "[e]xclusion of an official report is warranted only if the court finds that 'sources of information or other circumstances indicate lack of trustworthiness.'" *Id.* (citing Fred.R.Evid. 803(8); 2 *McCormick on Evid.* § 296 (6th Ed.) ("As the name indicates, these reports embody the results of investigation and accordingly are often not the product of the declarant's firsthand knowledge, required under most hearsay exceptions. Nevertheless, the nature and trustworthiness of the information relied upon, including its hearsay nature, is important in determining the admissibility of the report." (footnotes omitted))).

Although the Sixth Circuit has not expressly overturned *Miller*, this Court and other district courts have recognized that *Combs* provides the controlling law on the issue of firsthand knowledge under Rule 803(8). In *Johnson v. Baker*, this Court acknowledged that "the personal knowledge requirement does not extend to official reports admissible under Rule 803(8)." No. 1:08-CV-00038, 2009 WL 2486000, at *3 (W.D. Ky. Oct. 23, 2009) (quoting *Alexander*, 576 F.3d at 562). District Courts in the Southern District of Ohio and Eastern District of Michigan have also recognized that *Combs* is controlling law. *Nowell*, 2006 WL 2619846, at *4 n. 2 (acknowledging that "while the Sixth Circuit has not expressly overruled *Miller*, the Court follows the rule set out by *Combs* and *Hickson*); *Moore v. Bannon*, No. 10-12801, 2012 WL 2154274, at *9 (E.D. Mich. June 13, 2012) ("While the Sixth Circuit has not expressly overruled *Miller*, the current rule to be followed is set out by [*Combs*] and [*Hickson*], which confirm that it is not necessary that the person who prepares the report have first-hand knowledge of the events for the report to be admissible pursuant to Rule 803(8)"). Because Rule 803(8) does not require the person who prepares the report to have firsthand knowledge, Dr. Hiland's reliance on *Miller* is misplaced.

6

Having determined that the CIR is the product of a legally authorized investigation and that it is not barred by its preparer's lack of firsthand knowledge, the Court will now consider the four trustworthiness factors. First, Dr. Hiland argues that the Review Team did not possess special skill or experience. Dr. Hiland argues that Dr. Crall never participated in any other KDOC investigations. Dr. Hiland also identifies that the other members of the review team were not deposed to determine whether they had experience in KDOC investigations.

The Review Team consisted of the following individuals: Angela Dunham, KDOC legal services; Cookie Crews, KDOC Health Services Administrator; Dr. Deborah Coleman, KDOC Mental Health Director; Aaron Smith, Deputy Warden, Kentucky State Reformatory; and Dr. Doug Crall, KDOC Medical Director. (R. 224-2 at 23; R. 272 at 5). Plaintiff argues that "[i]t is illogical to suggest that this group of highly placed governmental officials did not possess the requisite 'skill and experience' to investigate the death of an inmate at KDOC's most prominent institution, KSP." (R. 272 at 5). Plaintiff also argues that Dr. Crall "possessed the skill and experience necessary to investigate and opine on the appropriateness of the critical care provided to Mr. Embry." *Id.* (citing R. 228-11 at 51-53, 67-68).

The Court is persuaded by Plaintiff's arguments that the Review Team possessed an appropriate level of skill and experience. Although it is unclear how many investigations the team members have participated in, each individual possesses professional knowledge and experience that enhances the trustworthiness of the CIR. The Review Team included two doctors and a healthcare administrator capable of evaluating the medical treatment provided to Mr. Embry. The Team also included a deputy warden with experience managing prison populations and implementing policies. Finally, the Team included an attorney with experience and skills important

7

for evaluating the appropriateness of prison policies and ensuring compliance with existing statutes and regulations. The composition of the Review team enhances the trustworthiness of the CIR.

Second, Dr. Hiland argues that "[t]here was no hearing, agency adjudication, or other mechanism by which the CIR was subject to cross examination or testing." (R. 238 at 8). Dr. Hiland asserts that the lack of a hearing prevented an exculpatory statement about Dr. Hiland that was not included in the final version of the CIR from being highlighted. Specifically, Dr. Hiland claims that an earlier draft of the CIR included an explanation that Dr. Hiland was on vacation when Mr. Embry died and that he "had no direct involvement." (*Id.*).

Plaintiff argues that "the findings stated in the CIR Report were subjected to an extensive public hearing before the Kentucky Legislature, which included the testimony of Jim Erwin, KDOC Deputy Commissioner," and "a reading of excerpts of the CIR Report and recommendations from an expert, Dr. Stern." (R. 272 at 6) (citing (R. 272-1)). Plaintiff also argues that courts in the Sixth Circuit give little weight to the hearing factor. (*Id.*) (citing *Bank of Lexington & Trust Co.*, 959 F.2d at 617 ("Although the NASD did not conduct any hearings, we note . . . that the rule makes no reference to such a requirement; the factor appears to be one of those suggested by the Advisory Committee")).

The lack of a formal hearing or adjudication does not render the CIR untrustworthy. The CIR was subjected to scrutiny when it was presented to the Kentucky Legislature in a public hearing. It is not necessary for an administrative hearing to be conducted in every instance for an investigative report to be trustworthy. *See, e.g., Bank of Lexington & Trust Co.*, 959 F.2d at 617; *Baker v. Elcona Homes Corp.*, 588 F.2d 551, 558 (6th Cir. 1978) ("We do not believe that a formal hearing is a Sine qua non of admissibility under [Rule 803(8)(A)(iii)] when other indicia of trustworthiness are present."). Furthermore, Dr. Hiland will be able to produce evidence that the

8

preliminary draft of the CIR contained exculpatory information through testimony at trial. The Court is not persuaded by Dr. Hiland's argument that the lack of a formal hearing indicates untrustworthiness in this case.

Third, Dr. Hiland argues that underlying motivational problems render the CIR untrustworthy. Dr. Hiland identifies that his employment was terminated "without cause" shortly after publication of the CIR. Among the eighteen recommendations contained in the CIR is the following: "The Departmental Health Services Administrator along with the Medical Director should review the actions of the APRN as well as the facility Physician relative to the medical care of Inmate Embry in the weeks preceding his death. Appropriate action based upon this review should be taken immediately." (R. 224-2 at 21). Further, Dr. Hiland asserts that the KDOC is shifting towards a policy of employing more nurse practitioners—who are cheaper to employ—than physicians. Dr. Hiland "believes Embry's death and the inaccurate CIR merely provided 'cover' for his dismissal." (R. 238 at 9). In other words, Dr. Hiland advances the theory that his employment was terminated as part of KDOC's effort to reduce payroll and that the CIR was used to cover-up KDOC's true motivation.

Plaintiff argues that Dr. Hiland's argument for the motivational favor is based on speculation and amounts to a conspiracy theory. Plaintiff identifies that "[i]f KDOC had any motivation, it would have been to find no fault on the part of any of its employees, including Dr. Hiland, with respect to Mr. Embry's death. In finding that multiple KDOC employees and agents . . . contributed to Embry's death, the agency only subjected its officials to civil liability." (R. 272 at 6).

Plaintiff's argument regarding the "motivational" factor is persuasive. Ultimately, the CIR found that "[t]he death of Inmate James Embry occurred as the result of a systematic failure at the

Kentucky State Penitentiary involving many interacting issues." (R. 224-2 at 19). This conclusion and the factual findings contained in the CIR increase KDOC's exposure to liability for the death of Mr. Embry. Furthermore, Dr. Hiland's employment was terminated "without cause" and Dr. Hiland has not produced evidence that the KDOC needed the CIR to "cover" his termination. Nothing on the record suggests that KDOC needed a "cover" to terminate Dr. Hiland. Thus, the Court is unpersuaded by Dr. Hiland's argument.

Finally, the "timeliness" factor is neutral to the determination of trustworthiness. Dr. Hiland acknowledges that "[t]he 'timeliness' factor is, at most, neutral in this case." (R. 238 at 8, n. 3). Plaintiff does not address this factor. The Review Team conducted its investigation approximately a month after Mr. Embry's death. Although the investigation could have been conducted more quickly, the Court finds that one month is a reasonable amount of time in this case. This factor does not weigh for or against the trustworthiness of the CIR.

Considering all of the factors, Dr. Hiland has failed to satisfy his burden of proof that the CIR is untrustworthy. The Court is persuaded that the Review Team possessed special skill and experience sufficient to ensure trustworthiness of the CIR. The Court is not persuaded by Dr. Hiland's arguments that the CIR suffers from motivational problems or that the lack of a formal hearing renders the CIR untrustworthy. For these reasons, the CIR is generally admissible pursuant to Rule 803(8).

**(B) Hearsay within hearsay.**

Dr. Hiland argues that, even if the CIR is not entirely inadmissible, those statements within the report that are themselves hearsay must be excluded. In other words, Dr. Hiland seeks an order declaring any and all "double hearsay" in the CIR to be inadmissible. "Rule 803(8) does not

circumvent the hearsay rule; any double hearsay contained in a report is admissible only if each level of hearsay qualifies independently for a hearsay exception." *Nowell*, 2006 U.S. Dist. LEXIS 68182, *15 (citing Fed. R. Evid. 805). Although the CIR is generally admissible pursuant to Rule 803(8), witness statements contained therein are double hearsay under Rule 805 and are inadmissible unless another exception to the hearsay rule applies. *See Baker v. Elcona Homes Corp.*, 588 F.2d 551, 559 (6th Cir. 1978); *See also In re Sept. 11 Litig.*, 621 F. Supp. 2d 131, 157 (S.D.N.Y. 2009); *United States v. Taylor*, 462 F.3d 1023, 1026 (8th Cir. 2006).

Although he argues that the CIR is "replete with hearsay statements from unidentified individuals," Dr. Hiland only identifies one specific statement. Dr. Hiland asserts that the following statement is inadmissible double hearsay:

> When questioned, most staff stated that they were not familiar with the MSO's or the HSP although they indicated that they knew they existed. In reference to the MSO's the Nursing staff consistently stated that they did not use them as they were not allowed to by the facility Physician and the APRN and in some instances had their licenses threatened by the APRN if they were found to have used them.

(R. 238 at 4; R. 224-2 at 15). The Court agrees that this statement is inadmissible double hearsay. Hearsay is a statement that the declarant does not make while testifying at the current trial or hearing and that the party offers in evidence to prove the truth of the matter asserted in the statement. Fed. R. Evid. 801(c). The statement in controversy is a summary of statements made by unidentified members of the nursing staff. The statement is offered as evidence to prove the nursing staff did not follow the facility's policies regarding hunger strikes. Because the statement is hearsay and Plaintiff does not offer an argument that it falls within an exception to the hearsay rule beyond Rule 803(8), it is inadmissible.

Thus, although the CIR is generally admissible pursuant to Rule 803(8), the Court acknowledges that certain portions of the report may be inadmissible double hearsay. The specific

portion of the CIR identified by Dr. Hiland and discussed above is an example of such inadmissible hearsay found within the CIR. But with the exception of this identified portion, Dr. Hiland does not identify other double hearsay statements. The Court orders counsel for Dr. Hiland to file what statements in the CIR he believes are double hearsay by 4/25/2019.

**(C) Subsequent remedial measures.**

Dr. Hiland argues that each of the eighteen recommendations included in the CIR must be excluded from evidence pursuant to Federal Rule of Evidence R. 407. Rule 407 precludes the use of subsequent remedial measures to prove negligence, culpable conduct, or a defect in a product or its design. Such measures are admissible, however, for "another purpose, such as impeachment or—if disputed—proving ownership, control, or the feasibility of precautionary measures." The Rule is grounded upon "a policy of encouraging people to take, or at least not discourage them from taking, steps in furtherance of added safety." Advisory Committee Note to Rule 407. In other words, Rule 407 permits parties to enhance the safety of their products, facilities, policies, and procedures free from fear that doing so will expose them to liability.

Recommendations made as part of an internal investigation report are precluded from evidence pursuant to Rule 407. *See In re Air Crash Disaster*, 86 F.3d 498, 531-32 (6th Cir. 1996) ("It is obvious that the memorandum is part of a discussion about whether McDonnell Douglas should recommend the check in the future—and such a change in policy is a subsequent remedial measure within the meaning of Fed. R. Evid. 407.") (citing *Hall v. American Steamship Co.*, 688 F.2d 1062, 1066 (6th Cir. 1982) (finding that steamship's choice to follow new safety policy after an accident was not admissible evidence of negligence under Rule 407)). Therefore, the eighteen recommendations included in the CIR are inadmissible.

In a previous opinion, this Court acknowledged that subsequent remedial measures taken by a non-party are not excluded from evidence by Rule 407. *Kelter v. Conken Sys.*, No. 5:12-CV-00053-TBR, 2014 WL 7335171 (W.D. Ky. Dec. 19, 2014) (acknowledging that although no Sixth Circuit precedent provides guidance regarding Rule 407 in this context, every other Court of Appeals that has considered the issue has held that Rule 407 does not require the exclusion of subsequent remedial measures taken by a non-defendant); *see also Brooks v. Caterpillar Global Mining Am., LLC.*, No. 4:14-CV-00022-JHM, 2016 WL 276126, *4 (W.D. Ky. Jan. 21, 2016). Although KDOC prepared the CIR and is not a named party in this action, the exception to Rule 407 does not apply to the CIR in this case.

"The logic for this exception to Rule 407 is that a nondefendant will not be inhibited from taking remedial measures if those measures are used against a defendant." *Bowling v. Scott County, Tenn.*, No. 3:04-CV-554, 2006 WL 2336333 (E.D. Tenn. Aug. 10, 2006) (quoting 2 Joseph M. McLaughlin, Jack B. Weinstein, & Margaret A. Berger, Weinstein's Federal Evidence § 407.05[2] (2d ed. 2006)); *See also Diehl v. Blaw-Knox*, 360 F.3d 426, 430 (3d Cir. 2004) ("The admission of remedial measures by a non-party will not expose the non-party to liability, and therefore will not discourage the non-party from taking the remedial measures in the first place."). Admitting the CIR's recommendations into evidence could discourage KDOC from making such remedial measures in the future. The CIR's recommendations potentially expose current and former KDOC employees to liability. In fact, four of the five individuals who prepared the CIR were previously defendants in this action. The chilling effect of admitting these subsequent remedial measures is not avoided by the absence of KDOC as a named defendant. The purpose of Rule 407 is to encourage KDOC and similarly situated entities to enact remedial measures to create safer policies and facilities. Allowing these remedial measures to be used against KDOC's employees and

former employees is not within the spirit of the Rule. Therefore, the recommendations contained in the KDOC are excluded from evidence.

### (D) Rule 403.

Finally, Dr. Hiland argues that the Court should exclude the CIR from evidence pursuant to Federal Rule of Evidence R. 403. Rule 403 permits the Court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Dr. Hiland argues that the CIR should be excluded from evidence because it may confuse the issues and mislead the jury. More specifically, Dr. Hiland argues that the CIR may lead the jury to believe he was more intricately involved in the care of Mr. Embry than he was, that the CIR's factual findings and recommendations regarding Mr. Embry's mental health treatment may confuse the jury, and that the CIR's factual findings and recommendations regarding prison security and prison administration may confuse the jury.

The CIR should not be excluded pursuant to Rule 403. Although the CIR contains information about individuals and aspects of Mr. Embry's imprisonment that do not pertain to Dr. Hiland, it also contains substantial probative evidence. Because the danger of misleading the jury and confusing the jury do not substantially outweigh the probative value of the CIR, the Court will not exclude the CIR under Rule 403.

### ORDER

**IT IS HEREBY ORDERED,** Dr. Hiland's motion *in limine* (R. 238) is **GRANTED in part and DENIED in part.** The following portion of the CIR shall be excluded from evidence:

> When questioned, most staff stated that they were not familiar with the MSO's or the HSP although they indicated that they knew they existed. In reference to the MSO's the Nursing staff consistently stated that they did not use them as they were not allowed to by the facility Physician and the APRN and in some instances had their licenses threatened by the APRN if they were found to have used them.

(R. 224-2). The recommendations included in the CIR shall also be excluded from evidence. The remainder of the CIR shall not be excluded from evidence unless Dr. Hiland files an additional motion *in limine* identifying specific portions of the CIR he believes to be double hearsay by 4/25/2019. **IT IS SO ORDERED.**

*Thomas B. Russell*

**Thomas B. Russell, Senior Judge**
**United States District Court**

April 22, 2019

cc: Counsel of Record.